UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LEVELL A. ABRAHAM,<br>                      Plaintiff,<br><br>v.<br><br>GLOBAL TRUST<br>MANAGEMENT LLC,<br>                      Defendant. | Case No. 21-10323<br>Honorable Shalina D. Kumar<br>Magistrate Judge Patricia T. Morris |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 16)**

### I.    INTRODUCTION

Plaintiff Levell Abraham commenced this lawsuit against defendant Global Trust Management LLC (GTM), alleging violations of the Fair Debt Collection Practices Act, FDCPA, 15 U.S.C. § 1692, *et seq.*, and the Michigan Occupational Code, M.C.L. 339.915. ECF No. 1. Abraham alleged that GTM engaged in conduct to harass, oppress, and abuse him in

its efforts to collect a debt, in violation of both the FDCPA and the MOC.[1]
*Id*.

GTM filed a motion for summary judgment asserting that Abraham lacks standing to bring an action under the FDCPA, and that summary judgment is appropriate on the merits because the evidence establishes conclusively that GTM did not violate the FDCPA or Abraham's duplicative MOC claims.[2] ECF No. 16. Abraham responded in opposition to this motion and GTM replied. ECF Nos. 19; 21. The Court held a hearing on this motion on September 19, 2022. ECF No. 24.

## II. FACTUAL BACKGROUND

Sometime before November 2020, Abraham obtained a line of credit through Check N' Go to finance the purchase of personal goods. ECF No. 1, PageID.3. Due to financial hardship, Abraham fell behind on the

---

[1] Abraham has abandoned the FDCPA claims other than those asserted under §§ 1692d, 1692d(5), and 1692f, as well as his MOC claim under M.C.L. 339.915(f). ECF No. 19, PageID.195.

[2] GTM also asks the Court to decline to exercise supplemental jurisdiction over Abraham's state claims if it grants summary judgment to GTM on the federal claims. ECF No. 16.

scheduled payments to Check N' Go, giving rise to the debt that is at the center of this action. *Id.*

Beginning in November 2020, GTM, which had been engaged to collect Abraham's debt, began calling his cell phone. *Id.*; ECF Nos. 16, PageID.61-66; 19, PageID.199-203. Over the ensuing three months, Abraham spoke to GTM representatives on at least five occasions, each time explaining that he was out of work and had been unsuccessful in his efforts to collect unemployment benefits. ECF Nos. 16-4-16-8. Abraham alleged that GTM placed not less than 30 calls to him. ECF No. 1, PageID.4. GTM's records reflect that it placed approximately 20 calls to Abraham's verified cell phone, another 24 calls to another cell phone number, and 18 calls to a number identified as belonging to Abraham's employer. ECF No. 16-3.

Notably, at least twice, Abraham initiated phone calls to GTM, returning an incoming call he had missed. ECF Nos. 16-7. 16-8. During the course of two phone calls (December 22, 2020 and January 29, 2021), Abraham asked GTM to stop calling his cell phone repeatedly. One GTM representative told him that GTM "cannot stop calling." ECF No. 16-7. Although GTM Chief Operating Officer Frank Torres testified that GTM's

policy was to inform debtors who verbally requested calls to cease that a written request was needed to discontinue calls, no GTM representative responded to Abraham's repeated requests with that information. ECF Nos. 16-4-16-8; 19-1, PageID.231-32, 241.

On January 29, 2021, another representative informed Abraham that the calls could be stopped by placing the account in a "refusal to pay status." ECF No. 16-8. When Abraham reiterated that he was not refusing to pay, but that he lacked income with which to pay the debt, the representative told him he could stop the calls by "just pay[ing] the bill." *Id*. That representative, a Mr. Brown, also told Abraham that, just as Abraham could not stop his pandemic-related issues with securing unemployment benefits, neither could GTM stop calling him. *Id*. On February 15, 2021, four days after Abraham filed this action, GTM phoned Abraham for the final time. ECF No. 16-6. At the conclusion of this call, the GTM representative indicated that he "will put him down for a cease and desist and…wait for his call." *Id*.

### III. ANALYSIS

#### A. Standing

GTM argues that this Court lacks subject matter jurisdiction over Abraham's claims because he lacks standing to bring them. ECF No. 16, PageID.66-70. To establish standing sufficient to satisfy Article III of the Constitution, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The Supreme Court defines an injury in fact as " 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Id*. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

"Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. at 341. A plaintiff "does not automatically have standing simply because Congress authorizes [him] to sue a debt collector for failing to comply with the FDCPA." *Ward v. Nat'l Patient Account Srvcs. Solutions, Inc.*, 9 F.4th 357, 361 (6th Cir. 2021). To establish Article III standing for a FDCPA action, a plaintiff must show that the procedural violation of the FDCPA is itself a concrete injury of the sort traditionally recognized or that the procedural violation caused an independent concrete injury. *Id*.

Abraham asserted that GTM's frequent, repeated phone calls, continued after Abraham requested they stop, violated the FDCPA, specifically §§ 1692d (prohibits debt collector from engaging "in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt"), 1692d(5) (prohibits "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number"), and 1692f (prohibits debt collector from employing "unfair or unconscionable means to collect any debt"). To demonstrate that these alleged statutory violations constitute a concrete injury sufficient to confer Article III standing, Abraham must show that GTM's repeated phone calls to him regarding the collection of his debt "resemble[] a harm traditionally regarded as providing a basis for a lawsuit." *Id*. at 362 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)).

The Sixth Circuit has recognized that alleged harms akin to invasion of privacy and intrusion upon the right to seclusion can provide the basis for a concrete injury under the FDCPA. *See id*. Indeed, "one of the purposes of the FDCPA is to stop abusive debt collection practices that contribute to

Page **6** of **14**

invasions of individual privacy." *Id*. (citing 15 U.S.C. § 1692d). The *Ward* court concluded that the failure to disclose a debt collector's identity was not sufficiently related to the common law injury of invasion of privacy to create a concrete harm for the purposes of Article III standing. However, a recent decision from this district held that repeated unwanted phone calls do create an injury closely resembling the common-law harm of invasion of privacy. *Chapman v. Nat'l Health Plan & Benefits Agency, LLC*, ___ F. Supp. 3d ___, 2022 WL 3130225, at *4 (E.D. Mich. Aug. 4, 2022). Invasion of privacy may be defined as "an intentional intrusion, physically or otherwise, upon the solitude of another" and "[c]ourts have…recognized liability for intrusion upon seclusion for irritating intrusions—such as when telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff." *Id*.at 4-5 (quoting Restatement (Second) of Torts § 652B and *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 462 (7th Cir. 2020))(marks omitted). The Court finds that Abraham's alleged injury from GTM's repeated frequent telephone calls is closely related to the traditional harm from common law invasion of privacy. He has thus sufficiently alleged a concrete injury and has standing under Article III to pursue his claims.

**B. Summary Judgment**

    1. Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The standard for determining whether summary judgment is appropriate is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). Additionally, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party, who must come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Id*. at 248, 251.

If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  The court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the

manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

2. Violations of FDCPA

Section 1692d of the FDCPA prohibits "[a] debt collector [from] engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. "While the question of whether conduct harasses, oppresses, or abuses will ordinarily be a question for the jury, courts have dismissed claims filed pursuant to § 1692d as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor." *Bostic v. Michael Andrews & Associates, LLC*, 2021 WL 4889591, at *3 (E.D. Mich. Oct. 19, 2021) (quoting *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 330 (6th Cir. 2006) (alterations and marks omitted). The Court must assess whether the facts, viewed in the light most favorable to Abraham, create a genuine issue for a jury to determine that GTM violated § 1692d. *Litt v. Portfolio Recovery Assoc. LLC*, 146 F. Supp. 3d 857, 872 (E.D. Mich. 2015).

Section 1692d lists, without limiting, examples of violative conduct, all of which "concern tactics intended to embarrass, upset, or frighten a

Page **10** of **14**

debtor." *Harvey*, 453 F.3d at 330. Section 1692d(5) requires a plaintiff demonstrate an intent to annoy, harass, or abuse. *Litt*, 146 F. Supp. 3d at 872. Intent is thus a required element under §§ 1692d and 1692d(5).

"Court[s] will analyze the volume of calls along with the pattern in which they were made and whether or not they were accompanied by oppressive conduct. *Bostic*, 2021 WL 4889591, at * 3 (quoting *Boozer v. Enhanced Recovery Co.*, 2019 WL 5295730, at *9 (E.D. Mich. Oct. 18, 2019)) (internal quotation marks omitted). A large number of calls from the debt collector to the debtor does not, alone, establish a violation of § 1692d. *Id*. But numerous calls accompanied by other oppressive conduct could "support an inference of an intent to annoy, abuse, or harass." *McGee v. Michael Andrews & Assocs.*, 2019 WL 2539344, at *2 (E.D. Mich. June 20, 2019).

The Court believes that the evidence before it is sufficient to place the question of GTM's intent to annoy, harass, or abuse Abraham before a jury. First, Abraham has presented evidence that GTM continued to call him despite his repeated requests that it stop calling him.[3] ECF Nos. 16-7; 16-8.

---

[3] GTM's argument that Abraham's § 1692d claim fails as a matter of law because he did not request the phone calls cease and desist in writing is unconvincing. A written cease communication notification can provide a

In response to his requests, GTM falsely advised Abraham that the calls could not stop, or that the only way for the calls to stop were if he was placed in a "refused to pay" status or if he paid the debt. *Id*. GTM never advised Abraham that he could stop the calls by sending a written notice requesting cessation of calls, despite the testimony of GTM Chief Operating Officer Frank Torres that GTM's policy was to inform debtors verbally requesting calls to cease that a written request was needed to discontinue calls. ECF Nos. 16-4-16-8; 19-1, PageID.231-32, 241. At least one GTM representative berated Abraham for being unable to pay the debt despite experiencing job loss and difficulty securing unemployment benefits during the brunt of the COVID-19 pandemic. ECF No. 16-8.

That GTM representatives violated company policy by not advising Abraham that he could end the phone calls by submitting his articulated request in writing, and instead falsely told him that he could not stop the repeated phone calls, when viewed in the light most favorable to Abraham, suggests an intent to harass and annoy him with continued phone calls.

---

basis for a claim under § 1692c if it is ignored by the debt collector, but such a letter is not a prerequisite for enforcing other claims under the FDCPA. *McGee*, 2019 WL 2539344, at *2. In other words, the failure to send a written notice requesting a cessation of calls does not preclude a finding that the continued calls violated § 1692d. *See id*.

GTM's agreement to cease its calls to Abraham on the February 15 phone call further reveals that the earlier refusals to honor Abraham's requests to stop calling were not legitimate and provides indirect evidence of an intent to harass. ECF No. 16-6. Moreover, the bullying derision evident in GTM's January 29, 2021 call to Abraham serves as direct evidence of an intent to harass or abuse. In sum, the record evidence is more than ample to send the question of GTM's intent to harass Abraham to the jury; summary judgment on §§ 1692d and 1692d(5) is not proper.

Summary judgment in favor of GTM is appropriate for Abraham's § 1692f claim, however. "[R]epeated phone calls naturally fall under § 1692d, which explicitly addresses phone calls." *Bostic*, 2021 WL 4889591, at *7. None of Abraham's allegations portray GTM's calls as "unfair" or "unconscionable" as opposed to "harassing or oppressive." *Id*. Accordingly, Abraham's repeated phone call allegations "should be analyzed under § 1692d, not § 1692f. *Id*. (citing *Salzman v. I.C. System, Inc.*, 2009 WL 3190359, at *9 (E.D. Mich. Sept. 30, 2009) and *Lashbrook v. Portfolio Recovery Assocs.*, 2013 WL 4604281, at *9 (E.D. Mich. Aug. 29, 2013)).

    3.  Violations of MOC

GTM argues that Abraham's MOC claim under M.C.L. 339.915(n) fails for the same reason that his §§ 1692d and 1692d(5) claims fail. Abraham's M.C.L. 339.915(n) claim mostly mimics the FDCPA claims, but the MOC section does not include an intent requirement for actionable harassment. M.C.L.339.915(n); 15 U.S.C. § 1692d(5). The Court thus agrees that the same § 1692d analysis, minus the intent determination, applies to M.C.L. 339.915(n) claims. *See Boozer*, 2019 WL 5295730, at *12. Because a question of fact exists as to whether GTM's conduct was harassing or abusive, GTM's motion for summary judgment must be denied as to Abraham's MOC claim.

## IV. CONCLUSION

For the above reasons, GTM's motion for summary judgment (ECF No. 16) is **GRANTED** as to Abraham's FDCPA claim under § 1692f and **DENIED** as to his FDCPA claims under § § 1692d and 1692d(5) and his MOC claim under M.C.L. 339.915(n).

Dated: September 21, 2022

s/Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge